# KEYES *v.* EUREKA CONSOLIDATED MINING COMPANY.

**APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.**

No. 228. Argued April 15, 1895. — Decided May 6, 1895.

A person in the employ of a smelting company invented a new method of tapping and withdrawing molten metal from a smelting furnace. He took out a patent for it, and permitted his employer to use it without charge, so long as he remained in its employ, which was about ten years. After that his employer continued to use it, and, when the patent was about to expire, the patentee filed a bill against the company, praying for injunctions, preliminary and perpetual, and for an accounting. Before the return of the subpœna the patent had expired. On the trial it appeared that the invention had been used for more than seventeen years with the knowledge and assent of the patentee, and without any com-

plaint on his part, except that the company had not paid royalties after he quitted its employment. The defences were, (1) that the Circuit Court had no jurisdiction of the case because no Federal question was involved and there was no diversity of citizenship of the parties; (2) that, even if there was a Federal question involved, the Circuit Court as a court of equity had no jurisdiction of the case because complainants had a plain, adequate, and complete remedy at law. The court below sustained both of the defences and dismissed the bill. *Held,* that the decree was fully justified.

THIS was a bill in equity filed by appellants against appellee in the Circuit Court of the United States for the Northern District of California to recover for the infringement of a patent. The patent, No. 121,385, bears date November 28, 1871, and was issued to appellants as joint inventors, the invention consisting of a method of tapping or withdrawing molten lead or other metals from a smelting furnace. The bill was filed October 29, 1888, and contained the usual prayer for an injunction, preliminary and perpetual, and for an accounting for damages and for profits. The subpoena was issued on that day, returnable December 3, 1888, but no notice was given of an application, nor was any application made, for a preliminary injunction. Appellee answered January 7, 1889, and a replication was filed on the fourth of the following February. No question was made as to the validity or construction of the patent, and the patent does not appear in the record. The defences were, (1) that the Circuit Court had no jurisdiction of the case because no Federal question was involved and there was no diversity of citizenship of the parties; (2) that, even if there was a Federal question involved, the Circuit Court as a court of equity had no jurisdiction of the case because complainants had a plain, adequate, and complete remedy at law. The Circuit Court,- Sawyer, J., sustained both of the defences and dismissed the bill, 45 Fed. Rep. 199, whereupon the case was brought to this court on appeal.

*Mr. Robert E. Foot,* with whom was *Mr. John Flournoy* on the brief, for appellants.

*Mr. A. B. Browne* for appellee.

*Mr. J. H. Miller, Mr. M. M. Estee,* and *Mr. D. Frieden-rich* filed a brief for appellee.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

As stated by the Circuit Court, when this patent was applied for and issued, complainants were both in the employment of the defendant, one as superintendent of defendant's mine, and the other as assayer and smelter at the mine and smelting works, each receiving a regular salary. While thus engaged they made the invention covered by the patent, and on April 19, 1871, before the application for the patent, put the improvement on the first furnace of defendant, and on April 24, the date of the application, put it on the second furnace. These improvements were continuously used in defendant's works from that time on to the commencement of this suit. Complainant Keyes left defendant's employment September 1, 1872, and complainant Arents on November 10, 1872. They were both aware of the use of the improvement thereafter and down to the time the suit was commenced, and it does not appear that Keyes had any communication with defendant upon that subject, but complainant Arents notified defendant's president in June, 1872, that the company could use the improvement while he remained in its employment, but that afterwards he would require the company to pay what others had to pay for its use, and, subsequently to November 10, 1872, Arents at various times made demands upon the company's secretary for payment for the use of the improvement, and in the summer of 1888 made a similar demand upon the company's president. Defendant did not contest the validity of the patent nor deny the use of the improvement, but defended on the ground that no case for equitable jurisdiction was presented upon the facts; and that, moreover, it clearly appeared that defendant had an implied license to use the invention without compensation while complainants continued in its employment, and to use it after they left for the same royalties charged other parties; and, there-

fore, that the remedy of complainants was an ordinary action at law, over which, as no diversity of citizenship appeared, the Circuit Court had no jurisdiction.

We think from an examination of the evidence that the Circuit Court was entirely right in its conclusion that there was at least an implied license to use the improvement upon the same terms and royalties fixed for other parties from the time complainants left defendant's employment while defendant was entitled to use the invention without payment of any royalties during the continuance of such employment. And, apart from that, that the decree cannot be reversed on the ground that the Circuit Court erred in dismissing the bill because when it was filed complainants were not entitled to any relief resting on grounds of equity, while their remedy at law, then and thereafter, was plain, adequate, and complete.

The jurisdiction in equity was predicated upon the right to an injunction "according to the course and principles of courts of equity." Rev. Stat. § 4921. The subpœna was issued and served October 29, 1888, returnable on the first Monday in December, which was December 3, 1888. The patent expired November 28, 1888, between the day of service of subpœna and the return day, and before defendant was required to or did file its answer.

No notice of an application for a preliminary injunction was given, nor any application made therefor, nor was there any showing on the pleadings or otherwise of irreparable injury to the complainants by the continued use of the invention for twenty-nine days after the bill was filed and before the expiration of the patent. Such a contention after seventeen years of use by appellee with appellants' knowledge would have been absurd, and even if appellants had applied for a preliminary injunction before the return day, the court would have been justified in refusing to award it. Obviously, the laches of appellants were such, upon their own showing, for the delay was unexplained, as to disentitle them to a preliminary injunction, as ruled by Mr. Justice Brewer, when Circuit Judge, in *McLaughlin* v. *People's Railroad* 21 Fed. Rep. 574, and by Judge Blodgett in *American Cable Railway*

*Co.* v. *Chicago City Railway Co.*, 41 Fed. Rep. 522. See also *Keyes* v. *Pueblo Smelting Co.*, 31 Fed. Rep. 560.

This record discloses that the invention had been used for more than seventeen years with the knowledge and assent of appellants and without any complaint on their part, except that appellee had not paid royalties after complainants quit its employment. This being so, the case clearly falls within *Root* v. *Railway Co.*, 105 U. S. 189; *Clark* v. *Wooster*, 119 U. S. 322; and *Lane & Bodley Co.* v. *Locke*, 150 U. S. 193; and the decree was fully justified.

In *Clark* v. *Wooster*, Mr. Justice Bradley, delivering the opinion of the court, said: "As to the first point, the bill does not show any special ground for equitable relief, except the prayer for an injunction. To this the plaintiff was entitled, even for the short time the patent had to run, unless the court had deemed it improper to grant it. If, by the course of the court, no injunction could have been obtained in that time, the bill could very properly have been dismissed, and ought to have been. But by the rules of the court in which the suit was brought only four days' notice of application for an injunction was required. Whether one was applied for does not appear. But the court had jurisdiction of the case, and could retain the bill, if, in its discretion, it saw fit to do so, which it did. It might have dismissed the bill, if it had deemed it inexpedient to grant an injunction; but that was a matter in its own sound discretion, and with that discretion it is not our province to interfere, unless it was exercised in a manner clearly illegal."

In whatever aspect viewed, we perceive no ground for disturbing the decree.

*Decree affirmed.*